# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:

| | |
|---|---|
| **CHRISTOPHER MATTHEW CAMPBELL dba CAMPBELL FARMS** | Chapter: 7 |
| Debtor 1 | Case No.: 5-18-bk-00773 RNO |
| **ABBEY LEE CAMPBELL** | Document No.: 44 |
| Debtor 2 | Nature of Proceeding: Motion to Convert Case to Chapter 13 |

## OPINION[1]

The Chapter 7 Debtors moved to convert their case to a case under Chapter 13. Objections were filed by the Chapter 7 Trustee and a secured creditor. For the reasons stated below, I will sustain the Objections and deny the Motion to Convert to Chapter 13.

**I.  Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**II.  Facts and Procedural History**

On February 27, 2018, Christopher Campbell and Abbey Campbell (hereinafter, Christopher and Abbey Campbell, jointly referred to as "Debtors"; individually referred to as "Christopher Campbell" or "Abbey Campbell") filed a voluntary petition under Chapter 7 of the Bankruptcy Code ("Present Filing").

On July 3, 2018, the Debtors filed a Motion to Convert the Present Filing to a case under Chapter 13 of the Bankruptcy Code. Mot. of Debtor(s) to Convert to Ch. 13 Proceeding ("Conversion Motion"), ECF No. 44. Mark J. Conway, the Chapter 7 Trustee ("Trustee"), filed

---

[1]  Drafted with the assistance of Timothy R. Powell, Esquire, Law Clerk.

1

an Objection to the Conversion Motion on July 20, 2018. Obj. to Debtors' Mot. to Convert Case to Chapter 13 From Chapter 7 ("Trustee's Objection"), ECF No. 51. On October 10, 2018, a secured creditor, Branch Banking and Trust Company ("BB&T") joined in the Trustee's Objection to the Conversion Motion. BB&T's Joinder in the Trustee's Obj. to Debtors' Mot. to Convert Case to Chapter 13 From Chapter 7 ("BB&T Joinder"), ECF No. 73.

An evidentiary hearing on the Conversion Motion was held on February 1, 2019, and the parties have submitted their post-hearing briefs. The matter is now ripe for decision.

A bankruptcy judge may take judicial notice of his or her own docket. *In re Harmony Holdings, LLC*, 393 B.R. 409, 419 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at *12 (Bankr. E.D. Pa. Jan. 11, 1991). I take judicial notice of the docket entries in the Debtors' Chapter 7 case, as well as the contents of the schedules and statements which are not reasonably subject to dispute.

**III. Discussion**

    **A. Conversion Under § 706(a) and Good Faith**

11 U.S.C. § 706(a)[2] of the Bankruptcy Code provides:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

In a landmark case, *Marrama v. Citizens Bank of Massachusetts*, the United States Supreme Court considered whether a Chapter 7 debtor has an absolute right to convert to Chapter 13. The Supreme Court considered a case where, seven months before the Chapter 7 petition was filed, the debtor transferred a valuable residence into a self-settled trust of which he was the sole beneficiary. After the Chapter 7 trustee indicated his intention to recover the property as an asset

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code" or "Code").

2

of the bankruptcy estate, the debtor filed a notice of conversion to Chapter 13. In the case considered by the Supreme Court, like here, the motion to convert was opposed by the Chapter 7 trustee and by a secured creditor.

The Supreme Court found that there is no absolute right to convert from Chapter 7 to Chapter 13. Further, if the bankruptcy court finds that such a conversion would be in bad faith, then a motion to convert may be denied. *Marrama v. Citizens Bank of Massachusetts*, 127 S. Ct. 1105, 1110-11 (2007).

*Marrama* does not set forth a specific test for me to evaluate whether the Conversion Motion was filed in bad faith. Like other courts in the Third Circuit, I find it appropriate to utilize some of the factors which are considered when evaluating whether a Chapter 13 case should be dismissed as having been filed in bad faith under § 1307(c). *See In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007); *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996).

Courts have considered the following factors in evaluating a motion to convert from Chapter 7 to Chapter 13:

> (i) whether the debtor is seeking to convert to chapter 13 in good faith (including a review of facts such as the timing of the motion to convert; the debtor's motive in filing the motion; and whether the debtor has been forthcoming with the bankruptcy court and creditors);
>
> (ii) whether the debtor can propose a confirmable chapter 13 plan;
>
> (iii) the impact on the debtor of denying conversion weighed against the prejudice to creditors caused by allowing conversion;
>
> (iv) the effect of conversion on the efficient administration of the bankruptcy estate; and
>
> (v) whether conversion would further an abuse of the bankruptcy process.

*In re Yarborough*, 2012 WL 4434053, at *2 (Bankr. E.D. Tenn. Sept. 24, 2012); *In re Piccoli*, 2007 WL 2822001, at *7 (E.D. Pa. Sept. 27, 2007). I will proceed to address the above factors to the extent they are relevant with respect to the Conversion Motion.

I find that the Trustee and BB&T have called into question the Debtors' good faith in filing the Conversion Motion. Therefore, the burden has shifted to the Debtors to prove their good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *In re Hunt*, 521 B.R. 479, 485-86 (Bankr. M.D. Pa. 2014); *In re Falch*, 450 B.R. 88, 93 (Bankr. E.D. Pa. 2011).

Several considerations cause me to conclude that the Debtors have not met their burden to show that the Conversion Motion was filed in good faith.

I take judicial notice that BB&T has filed four secured proofs of claim in this Chapter 7 case. They are Claim Nos. 2-1, 18-1, 19-1, and 20-1, and the claims total $410,987.50. These unobjected to claims constitute *prima facie* validity of the claims and their amounts. Fed. R. Bankr. P. 3001(f); *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *In re Sacko*, 394 B.R. 90, 98 (Bankr. E.D. Pa. 2008).

During the evidentiary hearing, Christopher Campbell admitted that payments have not been made to BB&T since 2016. During cross examination, he stated that he received a notice of sheriff's sale of BB&T's collateral scheduled for November 22, 2017. He acknowledged the Debtors filed a petition under Chapter 13 to stop the sheriff's sale. I take judicial notice that he Debtors filed a Chapter 13 bankruptcy on November 20, 2017, to Case No. 5:17-bk-04776 ("Prior Filing"). The Prior Filing was made seven days before the first scheduled sheriff's sale. It was effected by a petition only; the required schedules, statements, and plan were never filed by the Debtors. The Prior Filing was dismissed, on voluntary motion of the Debtors, on January 2, 2018.

The Present Filing was made on February 27, 2018. BB&T had a second sheriff's sale scheduled for the next day, February 28, 2019. I find that the timings of the filings of the Prior

4

Filing and the Present Filing are evidence of a lack of good faith by the Debtors. The protection of the automatic stay is not itself valid justification for a bankruptcy filing, rather it is a consequential benefit of an otherwise good faith filing. *In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605, 620 (3d Cir. 2009) (decided under Chapter 11 of the Bankruptcy Code); *In re Buccolo*, 397 B.R. 527, 529-30 (Bankr. D.N.J. 2008) (in considering a conversion from Chapter 7 to Chapter 13, two inquiries are particularly relevant: whether there is a valid bankruptcy purpose such as maximizing value and whether the debtor seeks to obtain a tactical advantage).

The Debtors have made substantial amendments to their bankruptcy schedules since the Present Filing was made. An example is Schedule I: Your Income. The original Schedule I, filed on March 26, 2018, shows that the Debtors had a total gross monthly income in the amount of $3,211.17. This figure represents the sum of three items:

| | |
|---|---:|
| Net Income from Operating a Business or Farm | -$ 38.83 |
| Family Support Payments | $ 100.00 |
| Campbell Family Trust | $3,150.00 |
| **Combined Monthly Income** | $3,211.17 |

Schedule I was amended on January 29, 2019. It shows net income from operating a business or farm of $11,422.25. ECF No. 102. I note that the amendment was filed three days before the evidentiary hearing on the Conversion Motion. No testimony was offered at the hearing to support the increased income figure.

Amended Schedule I shows more than a 300% increase in gross monthly income from that shown in the original Schedule I. Such a disparity causes the Court to question whether the Debtors have been forthcoming with the Court and their creditors. This is a further suggestion of a lack of good faith. Also, at hearing, the Debtors attempted to offer certain income calculations into evidence. Each of the offered exhibits were excluded due to a lack of foundation. *Elcock v. Kmart Corp.*, 233 F.3d 734, 754 (3d Cir. 2000) (an expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury); *McMillan v. Weeks Marine, Inc.*, 478 F. Supp.2d 651, 657 (D. Del. 2007).

My finding of a lack of good faith weighs against the grant of the Conversion Motion.

### B. The Impact on the Debtors by Denying Conversion Versus The Prejudice to Creditors by Allowing Conversion

I have a slim record from which to determine the value of Christopher Campbell's interest in an entity, the MJT Campbell Family Limited Partnership ("Limited Partnership"). Schedule A/B: Property, Question 25 schedules his beneficial interest in the Limited Partnership with a value of "Unknown." However, the Debtors' tax returns evidence that the beneficial interest generated royalty payments between 2015 and 2017 totaling $212,461.00. I find it is reasonable to assume that an investor would pay a sum, with an appropriate discount rate, to earn such a return. I also note that Schedule C: The Property You Claim as Exempt claims an exemption in the partnership interest. The exemption is claimed pursuant to § 522(d)(5) of the Bankruptcy Code. I express no opinion as to the allowability of the claimed exemption.

I do acknowledge the Trustee's argument that the interest in the Limited Partnership should be administered for the benefit of unsecured creditors. I conclude that allowing conversion to Chapter 13, at a minimum, would prejudice BB&T. *In re de la Salle*, 461 B.R. 593, 600 (9th B.A.P. 2011) (failure to pay secured claim while benefiting from the automatic stay prejudicial to creditor); *In re Euliano*, 442 B.R. 177, 188 (Bankr. D. Mass. 2010) (unreasonable delay in addressing secured claim prejudicial and cause for dismissal of Chapter 13 case). BB&T has not been paid since 2016 and has received no payments since the Chapter 7 petition was filed on February 27, 2018.

I find that the denial of conversion to Chapter 13 will have relatively little impact on the Debtors. They appear to be eligible for a Chapter 7 bankruptcy discharge with its attendant fresh start. At this stage, I cannot determine what assets, if any, can be administered by the Trustee. Clearly, he cannot administer the farmland used by the Debtors. The land is owned by Terry Campbell, Christopher's Father, and thus, is not property of the estate.

This factor also weighs against the grant of the Conversion Motion.

### C. Can the Debtors Propose a Confirmable Chapter 13 Plan?

Unfortunately, the Debtors have not filed a proposed Chapter 13 plan. Neither was a Chapter 13 plan introduced, nor described, during the February 1, 2019, hearing. This complicates the Court's task of determining whether a confirmable plan can be proposed.

The record establishes that the Debtors operate a family farm on land which they lease from Christopher Campbell's Father ("Terry Campbell"). Christopher Campbell testified at the February 1, 2019, hearing; Abbey Campbell did not.

The record also shows that the Debtors receive most of their monthly income by way of distributions from the Limited Partnership. I find that Christopher Campbell owns a 34% interest in the Limited Partnership. It appears that the remainder of the Limited Partnership is owned by Terry Campbell. The Limited Partnership receives royalty income from gas leases which it holds.

The Debtors' federal income tax returns for the years 2015, 2016, and 2017 were admitted into evidence. The returns can best be summarized as follows:

2015 Tax Return:

| | |
|---|---|
| Schedule E – Net Royalties from Limited Partnership | $106,348.00 |
| Schedule F – Net Income/Loss from Farm | ($57,216.00) |
| Total Income/Loss | $ 49,132.00 |

2016 Tax Return:

| | |
|---|---|
| Schedule E – Net Royalties from Limited Partnership | $ 35,018.00 |
| Schedule F – Net Income/Loss from Farm | ($97,975.00) |
| Total Income/Loss | $ 62,957.00 |

2017 Tax Return:

| | |
|---|---|
| Schedule E – Net Royalties from Limited Partnership | $ 71,095.00 |
| Schedule F – Net Income/Loss from Farm | ($93,891.00) |
| Total Income/Loss | ($22,796.00) |

At a minimum, a review of the tax returns shows that for the three years pre-petition, the Debtors' income has been decreasing.

BB&T argues that the Debtors are not individuals with regular income. This is a requirement for one to be a Chapter 13 debtor. § 101(30); *In re Mullins*, 360 B.R. 493, 499 (Bankr. W.D. Va. 2007); *In re Norwood*, 178 B.R. 683, 691 (Bankr. E.D. Pa. 1995). I acknowledge this argument but will concentrate instead on the plan confirmation requirement of feasibility.

In a Chapter 13 case, a party objecting to confirmation of the plan bears the initial burden of presenting some evidence to support his position. Once this initial burden is satisfied, the burden shifts to the debtor – the debtor always holds the ultimate burden of proof by a preponderance of evidence that the plan complies with the requirements of § 1325 of the Bankruptcy Code. *In re McKinney*, 507 B.R. 534, 539 (Bankr. W.D. Pa. 2014); *In re Wile*, 310 B.R. 514, 518 (Bankr. E.D. Pa. 2004).

One of the requirements for confirmation of a Chapter 13 plan is known as the feasibility requirement. The Bankruptcy Code provides that the court shall confirm a plan if:

> The debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a)(6). To satisfy the feasibility requirement, a debtor's plan must have a reasonable likelihood of success. That is, it is likely the debtor will have the necessary resources to make all the payments provided for in the plan. The debtor carries the burden of showing that the plan is feasible. *In re Soppick*, 516 B.R. 733, 748 (Bankr. E.D. Pa. 2014); *In re Drago*, 2015 WL 9777745, at *2 (Bankr. D.N.J. Dec. 18, 2015) (absent a showing that the Chapter 13 debtor will have sufficient income to fund her proposed plan, confirmation will be denied); *In re Schafer*, 2009 WL 2913439, at *2 (Bankr. E.D. Pa. Mar. 9, 2009).

I reject any implication that the substantial increase in the income stated in amended versus original Schedule I reflects an actual increase in the Debtors' monthly income. In fact, the evidentiary record contradicts such an implication.

Case 5:18-bk-00773-RNO    Doc 126    Filed 04/23/19    Entered 04/23/19 09:20:05    Desc
Main Document    Page 8 of 11

Christopher Campbell testified that in 2017, the family farm had dairy income of $105,910.00. Trial Tr. 55, ECF No. 112. He testified that the 2018 dairy income totaled $45,411.00. Trial Tr. 56, ECF No. 112. This shows a reduction of over 50% year over year.

The evidentiary record also shows that the royalty income received by Christopher Campbell from the Limited Partnership is also declining. The Debtors' 2015 income tax return shows gross royalties of $177,208.00. At hearing, Christopher Campbell testified that by 2018, his royalty income had declined to $53,738.00. Trial Tr. 57, ECF No. 112. Not only are the royalties declining, there is uncertainty as to their continuity. The partnership agreement for the Limited Partnership provides in Section 8.2 that "[t]he Net Cash Flow shall be distributed as the General Partner [Terry Campbell] deems advisable . . ." Limited Partnership Agreement, Debtors' Exhibit 6, 13. Further, the partnership agreement provides, "[t]he General Partner is specifically authorized to retain such reserves as the General Partner, in his/her discretion, deems necessary . . ." Limited Partnership Agreement, Debtors' Exhibit 6, 13. Partnership income, which is solely determined by a third party, is not "regular income" within the meaning of § 109(e) of the Bankruptcy Code. *In re Ross*, 173 B.R. 943, 946 (Bankr. E.D. Okla. 1994). Section 109(e) is a Bankruptcy Code provision which provides who is eligible to be a debtor under Chapter 13. *In re Pennypacker*, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990); *In re Corson*, 2004 WL 5865045, at *3 (Bankr. E.D. Pa. June 25, 2004).

The Debtors' 2017 income tax return shows that in that year they received gross income from the operation of a stone quarry. The quarry is located on property of Christopher Campbell's father. The declared quarry gross income for 2017 was $74,783.00. However, the uncontradicted record is that the quarry closed in the Fall of 2017. Christopher Campbell testified of his hope to reopen the quarry. However, he testified that he has not obtained the required blasting permit, nor posted the necessary bond to reopen the quarry. Trial Tr. 75, ECF No. 112. When a Chapter 13 debtor is self-employed, feasibility of a proposed plan is based

9

Case 5:18-bk-00773-RNO    Doc 126    Filed 04/23/19    Entered 04/23/19 09:20:05    Desc
Main Document    Page 9 of 11

upon earning history coupled with the likely stability of that income in the future. *Soppick*, 516 B.R. at 759. I conclude that there is no reasonable likelihood that the Debtors will have quarry income to fund a Chapter 13 plan.

Christopher Campbell testified that in 2018, he began "harvesting" field and creek stone on Terry Campbell's property. Trial Tr. 61, ECF No. 112. This involves collecting stones from fields and walls. The stones are placed on pallets and offered for sale to third parties. Trial Tr. 62, ECF No. 112. Christopher Campbell also testified that stone harvesting was a start-up operation in 2018. Trial Tr. 63, ECF No. 112. He testified that a sawmill on the property is not currently generating any income. Trial Tr. 63, ECF No. 112. I conclude that the chance of steady income from either field and creek stone harvesting, or operation of the sawmill, are too speculative to be considered as supporting a finding of feasibility.

As noted above, no payments have been made on the BB&T loans since 2016. Still, when Christopher Campbell was asked by the Trustee what funds the Debtors have in the bank, he replied, "[p]robably about eight hundred, $900 after paying bills, but I [have] been paying John Deere for the last six months." Trial Tr. 74, ECF No. 112. John Deere is another secured creditor of the Debtors. Deere and Company has filed Proofs of Claim Nos. 7, 8, 9, 10, 11, 12, and 13. Each claim is filed as a secured claim and the claims total $105,381.01. I have already taken judicial notice that BB&T's secured claims total $410,987.50. The Debtors' inability to accrue any cash reserves, while not paying their primary secured creditor, does not bode well for a successful Chapter 13.

Historically, the feasibility requirement for conversion from Chapter 7 to Chapter 13 has been treated by bankruptcy courts in one of two ways. Some bankruptcy courts analyze Chapter 13 feasibility as part of a good faith analysis. Other courts have considered feasibility as to whether or not there is "cause" for conversion of the case. In either event, a lack of feasibility is

grounds to deny the Conversion Motion. *In re Buccolo*, 397 B.R. at 530; *In re Sully*, 223 B.R. 582, 585 (Bankr. M.D. Fla. 1998); *In re Lilley*, 29 B.R. 442, 443-44 (1st Cir. B.A.P. 1983).

I find that the cumulative evidence shows that the Debtors' income suffers continual erosion. I conclude that the Debtors lack the regular income necessary to demonstrate the reasonable likelihood of their ability to fund a Chapter 13 plan. From that premise, I conclude that the Debtors cannot propose a confirmable plan.

This factor also weighs against the grant of the Conversion Motion.

## IV. Conclusion

Based upon all of the foregoing, the Objections are sustained, and the Conversion Motion will be denied. A disposition order shall be entered consistent with this opinion.

By the Court,

_____
Robert N. Opel, II, Chief Bankruptcy Judge (BI)

April 23, 2019